UNITED STATES DISTRICT COUT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STEVE NORWOOD, | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | A CIVIL ACTION 4:21-cv-1195 |
| | § | |
| TOWN OF TROPHY CLUB, TEXAS, | § | |
|     Defendant | § | A JURY IS DEMANDED |

# PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**COMES NOW, STEVE NORWOOD**, Plaintiff herein, complaining of Town of Trophy Club, Texas (hereinafter referred to as "Trophy Club" or "Defendant"), Defendant herein, and in support would show the Court as follows:

## I.     NATURE OF THE CASE

1.     This is an action under 42 U.S.C. 1983 *et seq.,* for deprivation of a public employee's liberty and due process interests, and a pendent state (Texas) cause of action for liquidated damages stemming from the breach of a written contract.

2.     Plaintiff **STEVE NORWOOD** ("Plaintiff" or "Norwood") alleges that Defendant Trophy Club publicly stated it has terminated Mr. Norwood – its Town Manager – "for cause," when in fact no such case exists

## II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343, because Plaintiff's liberty and property interests and due process causes of action are based on both a federal question and violations of rights secured by the Constitution of the United States.

This Court has pendent jurisdiction over Plaintiff's Texas cause of action for breach of a written contract.

4. Venue is proper in the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. §§1391(b)(2), because a substantial part of the unlawful employment practices giving rise to Plaintiff's causes of action were committed at 1 Trophy Wood Drive, Trophy Club, Tarrant County, Texas 76262-9700, located within the United States District Court for the Northern District of Texas, Fort Worth Division.

### III.   PARTIES

5. Plaintiff **STEVE NORWOOD** is a resident of Tarrant County, Texas.

6. Defendant **TOWN OF TROPOHY CLUB, TEXAS,** is a public, local government entity established and organized under, and pursuant to, the laws of the State of Texas, with authority to sue and be sued in its own name, and may be served by serving its Mayor, Ms. Alicia Fleury, at 1 Trophy Wood Drive, Trophy Club, Tarrant County, Texas 76262-9700, or by serving its Town Governance Officer / Town Secretary, Ms. Leticia Vacek, at 1 Trophy Wood Drive, Trophy Club, Tarrant County, Texas 76262-9700.

### IV.   FACTS

7. Plaintiff Steve Norwood ("Norwood") is a fifty-seven (57) year-old, well-qualified, very experienced and highly skilled city manager, with thirty-five (35) years' total experience in public management. Norwood has served cities ranging in population size from 8,000 to 200,000 in numerous capacities – from intern, assistant to the City Manager, Director, Assistant City Manager, to City Manager – a capacity in which Norwood has more than twenty (20) years' experience. Norwood's career included serving such Texas cities as Euless (intern, assistant to City Manager, Director of Economic Development), North Richland Hills (Assistant City

Manager), Grand Prairie (Director of Development), Wylie (City Manager), Lancaster (City Manager), and Round Rock (City Manager). Norwood also served over seven (7) years as the City Manager of Prescott, Arizona.

8. The Town of Trophy Club, Texas ("Trophy Club") is a home rule municipal corporation with a population just under 12,000, located in Northeast Tarrant County, Texas. Trophy Club is governed by a seven (7) member Town Council. On or about September 19, 2019, Norwood and Trophy Club entered into a mutually binding written contract titled "Town Manager Employment Agreement," in which Norwood was hired to serve as Trophy Club's "Town Manager." In the Town Manager Employment Agreement (attached to this Complaint as Exhibit 1), Trophy Club describes Norwood as "an individual who has the requisite training and experience" to serve as Trophy Club's Town Manager, and, on information and belief, Trophy Club hired Norwood because he was the most qualified candidate for the job.

9. Sections 1 and 2 of Trophy Club's Town Manager Employment Agreement provided that, at the pleasure of Trophy Club's Town Council, Norwood would serve as Trophy Club's Town Manager and perform the functions and duties of the Town Manager specified in the Town Charter, including without limitation, Article IV of the Home Rule Charter of the Town of Trophy Club (the Trophy Club Town Charter is attached as Exhibit 2). In Sections 3 and 4 of the Town Manager Employment Agreement, Trophy Club promised to pay Norwood and annual base salary of $200,000 per year (subject to adjustments as provided or required by Trophy Club's compensation policies), plus benefits including health coverage for Norwood and his family, and disability and life insurance.

10. In Section 6 of the Town Manager Employment Agreement, Trophy Club agreed to pay Norwood – in addition to other salary and benefits provided – a vehicle allowance in the amount

of five hundred dollars ($500) per month. In Section 7 of the Town Manager Employment Agreement, Trophy Club promised to maintain enrollment for Norwood in the Texas Municipal Retirement System ("TMRS") and make all appropriate contributions related thereto. In addition, Trophy Club promised to contribute the sum of twenty-five thousand dollars ($25,000) to a deferred compensation account for Norwood supported through the International City / County Management Association Retirement Corporation ("ICMA-RC") – now called MissionSquare Retirement.

11.     It is well known among city managers and town managers – on the one hand – and city councils and town councils – on the other hand – that both the hiring and firing of city and town managers can become political. Election volatility at the municipal level can lead to significant and sometimes rapid turnover in city or town management. Unlike other professional careers (where an employee losing a job may very well be able to walk across the street and work for a competitor), in the business of municipal management nearly every change in employment requires moving to another city or town, uprooting one's family, investigating new school districts, having to sell one home and buy another, among other expensive economic inconveniences. As a result, in order to induce well-qualified, experienced and skilled candidates to relocate and risk such future upheaval, city or town management contracts often include special protections for city or town managers from these potentially volatile uncertainties. For example, in Section 10 of Trophy Club's Town Manager Employment Agreement – while the Town Manager is an at will employee and always serves at the pleasure of the Town Council – Trophy Club nevertheless promised Norwood eighteen (18) months' salary in the event he was terminated "without good cause." Section 12, however, provides that Trophy Club is not obligated to pay Norwood's severance if it terminates Norwood for "Good Cause," which the Agreement defines solely as the

following extreme and severe negative actions:

    A.    Any willful, knowing, grossly negligent, or negligent breach, disregard or habitual neglect of any provision of this Agreement, or any willful, knowing, grossly negligent, or negligent breach, disregard or any habitual neglect of any duty or obligation required to be performed by Town Manager under this Agreement, under the Town of Trophy Club Home Rule Charter, or under the laws of the United States or the State of Texas, as amended; or

    B.    Any misconduct by Town Manager involving an act of moral turpitude, criminal illegality (excepting minor traffic violations), or habitual violations of the traffic laws, whether or not related to Town Manager's official duties hereunder; or

    C.    Any willful, knowing, grossly negligent, or negligent misapplication or misuse, direct or indirect, by Town Manager of public or other funds or other property, real, personal, or mixed, owned by or entrusted to Town, any agency or corporation thereof, or Town Manager in his official capacity; or

    D.    Illegal use of drugs, hallucinogens, or other controlled substances regulated by the Texas Controlled Substances Act; or

    E.    Conviction of a felony or crime involving moral turpitude; or

    F.    Knowingly falsifying records or documents; or

    G.    Conscious misrepresentation or omission of material facts to the Town Council or other Town officials in the conduct of the Town's official business.

During his time serving the Town of Trophy Club, Norwood did not engage in any of the foregoing activities; nor had Norwood ever – in the history of his career in public service – ever engaged in any such activities.

13.    In fact, prior to executing his contract with Trophy Club, in every one of Norwood's previous City Manager positions, Norwood had received only positive evaluations and had always left on his own accord. Generally speaking, under Norwood's past leadership, his prior municipal employers had experienced increased bond ratings, increased revenues, balanced general fund, decreased turnover, commitment to public safety at a high level, and enhanced parks and recreation

programs for citizens. In his extensive pre-Trophy-Club career, Norwood had never been accused of wrongdoing, never been alleged to have failed to respond timely to citizen or council requests, and never had his ethics questioned, in any of his prior positions. Prior to arriving at Trophy Club and during his tenure there, Norwood enjoyed a good reputation in public service, looked forward to continuing his longstanding career in city management, and had every reason to believe he would remain gainfully employed and productive until such time as he decided to retire.

14. Not surprisingly, given his qualifications and experience, Norwood was heavily recruited for Trophy Club's Town Manager position by then-council member Eric Jensen. Jensen is the son of Grand Prairie Mayor Ron Jensen and was familiar with the high-quality work Norwood had performed there. Jensen persuaded Trophy Club's Town Council to hire Norwood by a 6-1 majority vote, with then-council member Alicia Fleury voting against. Oddly, Fleury told Norwood her vote was not personal and was instead merely a vote against Jensen and Jensen's handling of Norwood's hiring process, and the fact that Fleury opposed Jensen politically. After Trophy Club's Town Council voted 6-1 to hire Norwood, the parties executed Trophy Club's Town Manager Employment Agreement in September of 2019.

15. Approximately one year later, Jensen filed to run for Mayor, following through on a decision he had announced publicly months earlier. Fleury then announced her desire to run for Mayor. Both Jensen and Fleury were required to resign their Town Council seats in order to run (as they were both sitting council members). Fleury won the race for Mayor, and one Town Council member privately told Norwood: "you are f*cked." Fleury's attitude toward Norwood after her victory became increasingly hostile to Norwood, and it soon became apparent to Norwood Fleury now held a grudge and was pursuing a personal vendetta against him. It was as if Fleury were saying, "Eric may have brought you in, but I can take you out." Along with this election a very

well-known former council member was also elected who had been vigorously opposed to Jensen politically – Greg Lamont. Lamont was quickly appointed Mayor Pro Tem and selected to serve on every Trophy Club Town Council sub-committee.

16. Section 13 of Trophy Club's Town Manager Employment Agreement required that Norwood's performance be evaluated at least one time per year, near the anniversary date of the Agreement. The Agreement required that Norwood's final written performance evaluation shall be completed and delivered to Norwood within thirty days of the evaluation meeting. Trophy Club, however, never complied with this provision. Instead, Norwood was not reviewed for approximately eighteen 18 months. Then, Norwood was "reviewed" during three 3 consecutive meetings (held every two weeks). Norwood was given a few minor criticisms, coming only from the Mayor and newly elected council member Greg Wilson. Under the Town Charter and Town Manager Employment Agreement, however, Norwood did not work for the Mayor or Mayor Pro Tem. Rather, he worked for all seven 7 elected council members. Norwood was never provided a formal written evaluation; nor was he E-mailed the minor concerns discussed. Norwood was never formally told there was any relationship-threatening problem. He was never directed to correct issues, behaviors, etc., or lose his job. Norwood was never put on a PIP (personal improvement plan) or told he would be fired if these alleged criticisms were not remedied within a certain time frame. Norwood was never told by the Council his job was even in jeopardy.

17. Rather, in early May of 2021, the Town Council posted public notice that, at a special meeting on May 19, 2021, the Council would go into executive session for the "annual review of town manager and consultation with attorney." At the end of the executive session, Trophy Club's Town Council returned to open session and announced it had terminated Norwood's employment as Town Manager – "for good cause." The Council then refused to pay Norwood the eighteen (18)

month severance required by the contract. To this day, Trophy Club's Town Council has never identified any facts or actions by Norwood constituting "good cause."

18.     Norwood would show this Court that – at the time the Town Council voted to terminate Norwood's employment on May 19, 2021, and at no time since then – no good cause existed, as "good cause" is defined by the Agreement. Rather, upon information and belief, the Council took its action based on information generated by one-sided, limited and partial investigations apparently conducted by purely partisan interests into certain alleged actions of Mr. Norwood. Norwood would show the Court that the same partisan interests served as accuser, investigator, prosecutor, and trier of fact against him. Norwood personally was provided no notice of the alleged accusations, nor the fact that the termination of his employment would be taken up. Norwood was provided no opportunity to conduct his own investigation, have a lawyer present, confront any accusers, call witnesses, introduce documents, address the Council, or defend himself in any way. When the true facts come to light, Norwood will show the Court that most the facts allegedly forming the basis of his termination are both untrue and fall short of "good cause," as defined by the Agreement.

19.     Moreover, the sole reason posted by the Town Council for the executive session in the notice it posted for the special meeting on May 19, 2021, was "annual review of town manager and consultation with attorney." Because the Agreement requires the Town Council to conduct an annual review of the Town Manager in the normal course business and as a contractual requirement, the notice was insufficient to put the public on notice of the fact that termination of the Town Manager's Contract would be considered. The citizens of Trophy Club had a special interest in matters relating to the termination of employment of their chief administrative officer because of the importance of those duties to the citizens, and of the broad contact with the public

those duties involve. Because an "annual review" is a mere administrative function required by the terms of the Agreement, the notice given for the May 19 meeting was insufficient to give the public notice of the termination of Norwood's employment. Thus, the action taken at the May 19 meeting was void under the Texas Open Meetings Act. TEX. GOV'T CODE §551.041. *Mayes v. City of De Leon*, 922 S.W.2d 200, 203 (Tex.App. – Eastland 1996); *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765-66 (Tex. 1991); *Cox Enterprises, Inc. v. Board of Trustees of Austin Independent School District*, 706 S.W.2d 956, 959 (Tex. 1986).

## V. CAUSES OF ACTION

### A) Count 1 – Violations of Procedural and Substantive Due Process; Property Interest; Liberty Interest:

20. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs 1-19. Prior to the Town Council's meeting on May 19, 2021, Norwood's attorney wrote the Town Council a letter putting the council on notice that "[d]emand is hereby made for consideration of the due process rights of Mr. Norwood in his property and liberty interests." Norwood's counsel further explained:

> It is also a fundamental requirement of due process for the accused to have reasonable means of presenting a meaningful defense. A decision has apparently been made without giving him a chance to see the evidence or present his defense. Making public any determination of facts about Mr. Norwood's property or liberty interests, whether by statement, in a PIP or finding of good cause that have been determined in violation of his due process rights would also be a violation of his constitutional rights.

Despite its awareness of Norwood's property, due process and liberty interests, and without affording Norwood a hearing to defend or clear his name, the Town Council terminated Norwood and publicly stated it was for "good cause.

21. Norwood held a property interest in his job, as well as a liberty interest in his reputation as a public servant, and the action by Trophy Club's Town Council on May 19 was "state action"

infringing on both Norwood's property and liberty interests. Norwood's property and liberty interests are protected by the Fourteenth Amendment to the United States Constitution, which requires due process before state action to deny Norwood his property or liberty interests.

22. To establish a liberty interest, an employee need only show:

   1) he was discharged;
   2) stigmatizing charges were made against him in connection with the discharge;
   3) the charges were false;
   4) he was not provided notice or an opportunity to be heard prior to the discharge;
   5) the charges were made public;
   6) he requested a hearing to clear his name; and
   7) the employer denied the request.

*Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006).

23. Here, the Town Council's public statement that it terminated Norwood "for good cause" is a buzzword in the field of municipal management. City managers' and town managers' routinely define "good cause" to be egregious acts committed by the city or town manager. By labeling Norwood's termination as "for good cause," Trophy Club's Town Council is publicly and falsely stating that Norwood engaged in such conduct. This so taints and stigmatizes Norwood that, until he is able to clear his name, he is unemployable in his chosen profession of municipal management and public service.

24. With regard to due process, the right to provide a meaningful defense is a fundamental requirement of due process. The failure of the Town Council to interview Norwood, or to provide him with notice of any charge, or to afford him the opportunity to present his explanation or additional information tainted the action of the Town Council and rendered its decision fundamentally flawed. Norwood was never provided the opportunity to tell his side of the story, confront any alleged witnesses or evidence against him, or put any alleged facts or statements into context, prior to the vote. Further, due process does not permit the same person to be the

investigator, prosecutor and trier of fact. Thus, it was a violation of due process for the Town Council to allow the same individuals to act as the accusing witness, investigator, prosecutor and trier of fact on May 19. By permitting it, the Town Council denied Norwood his due process rights.

25. Because Norwood's property and liberty interests, as well as his right to due process, were infringed, Norwood hereby sues under 42 U.S.C. §1983 and seeks all actual damages, including but not limited to back-pay and front-pay, as well as compensatory damages, including but not limited to emotional distress, loss of reputation and loss of earning capacity.

### B) Count 2 – Breach of Contract; Contractual Damages; Conditions Precedent:

26. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs 1-25. Plaintiff Norwood asserts his pendent state claim for breach of contract.

27. Defendant Trophy Club entered into a valid contract with Plaintiff Norwood. Plaintiff Norwood performed his obligations under the contract, and Defendant Trophy Club breached its obligations imposed by the contract. Specifically, Defendant Trophy Club terminated Plaintiff Norwood without good cause and became obligated to pay Norwood the contractual severance amount of eighteen months' salary, which is $300,000. Defendant Trophy Club breached the contract by refusing to pay the contractual severance made necessary by its own actions. Defendant Trophy Club's breach of this obligation resulted in damages to Plaintiff Norwood in the amount of $300,000.

28. As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff sustained actual damages in an amount equal to the unpaid severance amount of eighteen months' salary, which is $300,000. As a result of Defendant Trophy Club's failure to pay the demanded presented, Plaintiff has incurred attorney's fees and litigation costs for which he demands compensation. Plaintiffs would also ask this Court to assess pre-judgment and post-judgment

interest on the amounts justly due to Plaintiffs.

29. Norwood presented his demand for payment of the contractually mandated severance. In response, Defendant Trophy Club has made no payments, as of the filing of this lawsuit. All conditions precedent to Plaintiffs' claim for relief have been performed or occurred.

30. Plaintiff Norwood is entitled to recover reasonable attorney's fees and expenses under §38.001 of the Texas Civil Practice and Remedies Code, and because the Trophy Club Town Manager Employment Agreement expressly provides for attorney's fees

## VI. PRAYER FOR RELIEF

31. The Plaintiff, **STEVE NORWOOD**, asks that this Court enter a judgment:

(1) Declaring Norwood's "termination" a void action under the Texas Open Meetings Act and awarding him all amounts due under the Agreement from the date of his void "termination" until such date on which he is lawfully terminated by Trophy Club, if any;

(2) Declaring that the acts and practices complained of in this Second Amended Complaint are in violation of federal law and constitute violations of his liberty, property and due process interests;

(3) Awarding Norwood his actual damages, including back-pay and front-pay, as well as compensatory damages, including but not limited to emotional distress and loss of reputation;

(4) Awarding Norwood his liquidated damages in the form of severance pay in the amount of $300,000;

(5) Awarding Norwood pre-judgment interest on the amounts owed at the maximum rate allowed by law;

(6) Awarding the Norwood's costs of this action, together with reasonable and necessary attorneys' fees and expert witness fees;

(7) Awarding Norwood's post-judgment interest on the amount of the judgment until paid at the maximum rate allowed by law; and

(8) Awarding Norwood such other relief, legal or equitable, as the Court finds may be warranted.

## DEMAND FOR JURY

Plaintiff demands trial by jury of all issues of fact raised by its complaint.

Respectfully submitted,

Walter L. Taylor
State Bar No. 19727030
HART LAW FIRM, PLLC
*Walt@thehartlawfirm.com*
6630 Colleyville Blvd, Suite 100
Colleyville, Texas 76034
Tel: (817) 329-7020
Fax: (682) 292-7406
ATTORNEY FOR PLAINTIFF